IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:13-CV-58-BO

JANET A. LICHTNER, CONWAY H. )
SPIERS, PHILIP W. STOPHEL, and )
BRENDA F. STOPHEL, )
    Plaintiffs, )
     )
v. )   O R D E R
     )
AMERICAN NATIONAL INSURANCE )
COMPANY, )
    Defendant. )

This cause comes before the Court on defendant's motion for judgment on the pleadings.[1] Plaintiffs have responded, defendant has replied, and the matter is ripe for review. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs seek to impose liability on defendant for its alleged role in a Ponzi scheme orchestrated by Diversified Lending Group (DLG) and its investment services division, Applied Equities, Inc (AEI). DLG offered investment programs in, *inter alia*, what was held out to be a business operation consisting of the acquisition and operation of income producing properties. DLG offered two investment options – the 12% option and the 9% option. Investors in the 12% option received a securitized note and were guaranteed an annual return of 12%. Investors in the 9% option were guaranteed a 9% annual return and their principal investment was to be 100%

---

[1] Also pending is defendant's motion to dismiss plaintiffs' complaint. [DE 7]. In response to the motion to dismiss, plaintiffs filed an amended complaint, to which defendant has filed an answer and the instant motion for judgment on the pleadings. In light of the foregoing, defendant's motion to dismiss is denied as moot.

1

insured by a AA or better rated insurance company. Defendant sold annuities to DLG which were then assigned to plaintiffs as a part of the 9% investment option.

## PROCEDURAL HISTORY

Plaintiffs originally filed suit against defendant in New Hanover County Superior Court on March 9, 2012, alleging violations of North Carolina's Securities Act. Plaintiffs voluntarily dismissed that action without prejudice on September 9, 2012. Plaintiffs then filed this suit against defendant on February 25, 2013, in New Hanover County Superior Court alleging a claim for unfair and deceptive trade practices under North Carolina law. Defendant timely removed the action to this Court on the basis of its diversity jurisdiction. 28 U.S.C. §§ 1441; 1332.

Defendant moved to dismiss plaintiffs' complaint as beyond the statute of limitations. Plaintiffs, in response, amended their complaint, and now allege claims for common law fraud, unfair and deceptive trade practices, negligent misrepresentation, negligence, and, in the alternative, violations of the North Carolina Securities Act. Plaintiffs further contend that defendant should be equitably estopped from asserting a statute of limitations defense due to the fraudulent actions of one of its agents, who plaintiffs contend had actual knowledge of the fraud described and intentionally deceived plaintiffs into believing their investments were fully secured by annuities issued by defendant.

In response to plaintiffs' amended complaint, defendant filed an answer and moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant contends that all of plaintiffs' claims are barred by the applicable statutes of limitations, that it should not be estopped from raising such defense, and that plaintiffs have failed to state claims upon which relief can be granted. Plaintiffs do not contest defendant's

motion for judgment on the pleadings as to their claims for negligence and negligent misrepresentation. [DE 21 at 1].

## DISCUSSION

I. LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted is assessed under the Rule 12(b)(6) standard. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Attain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts plead "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The facts taken in the light most favorable to plaintiffs are as follows. Relying on representations by Danny Alvis, an investment advisor with a radio program, plaintiffs each initially invested in the 12% option. Plaintiff Lichtner purchased a five-year investment note in the amount of $275,000 dated March 13, 2007; plaintiff Spiers purchased a five-year investment note in the amount of $190,500 dated March 28, 2007; plaintiffs Stophel purchased a five-year investment note in the amount of $100,000 dated April 19, 2006.

3

In the spring of 2007, plaintiffs were each notified that Alvis may not have been truthful about their investments with DLG and were given the opportunity to remain in the 12% option, convert to the 9% option, or rescind their entire investments. Plaintiffs, relying on the representations of DLG and AEI, each elected to convert to the 9% option; plaintiff Lichtner relied explicitly on the representations of Diane Cano, president of AEI and authorized agent of defendant, that her principal would be entirely secured by the collateral assignment of an annuity. During the summer of 2007, Cano, acting within the course and scope of her agency relationship with defendant, applied for annuities on the life of Bruce Friedman, president of DLG. The annuities were then issued by defendant and assigned to plaintiffs as supposed security for 100% of their initial investments. The face of the assignments contained a notation that the annuities secured each of plaintiffs' contracts and was for "not more than" the amount of each plaintiffs' principal investment with DLG. In fact, each annuity had been issued in the amount of approximately 10% of each plaintiffs' initial investment.

On March 4, 2009, the U.S. Securities and Exchange Commission (SEC) filed an action against DLG, AEI, and Bruce Friedman. Plaintiffs each received a letter in March 2009 from the receiver for DLG and AEI informing them that the government had taken control of the assets and liabilities of DLG and AEI. Following DLG's default on plaintiffs' notes, each plaintiff received from defendant the cash value of their annuity contracts, or roughly 10% of their principal investments with DLG.

II. STATUTE OF LIMITATIONS

The primary issue for the Court to decide in regard to defendant's statute of limitations defense is when plaintiffs' claims accrued. Claims under the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA) must be brought within four years after the cause of

4

action accrues. N.C. Gen. Stat. § 75-16.2. Because plaintiffs' claim is based on defendant's allegedly fraudulent conduct, their claim accrued "when the fraud is discovered or should have been discovered with reasonable diligence." *Nash v. Motorola Comm. & Elec., Inc.*, 96 N.C.App. 329, 331 (1989). "The question of when a plaintiff 'should have discovered' the fraud is typically a question of fact, but this question may be determined as a matter of law where the plaintiff clearly had both the capacity and opportunity to discover the fraud." *Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust*, 87 F. App'x 314, 319 (4th Cir. 2004) (citing *Grubb Prop., Inc. v. Simms Inv. Co.*, 101 N.C.App. 498 (1991)). Similarly, claims under the North Carolina Securities Act (NCSA) must be brought within three years after a person discovers the facts constituting the violation or should have discovered a deceitful or fraudulent act that conceals the violation. N.C. Gen. Stat. § 78A-56(f).

Defendant contends that plaintiffs were on inquiry notice in the summer of 2007, after they had received information that there may be a problem with their investments and were given the opportunity to withdraw their investments or convert to the 9% investment program, which offered a lower return but was purported to be secured 100% by a collateral assignment of annuities issued by a highly rated insurance company. Defendant further contends that plaintiffs had every opportunity to inquire about the actual amount of their annuities once they had been assigned. Defendant does not at this stage dispute that the fraud was in fact discovered by plaintiffs in March 2009 when they were contacted by the receiver for DLG and AEI after the SEC had initiated suit against them.

The Court finds that at this stage of the proceeding the question of fact as to when plaintiffs should have discovered the fraud is not resolvable, and that a reasonable trier of fact could conclude that plaintiffs should not have discovered the fraud until they were notified of it

5

by the SEC. Plaintiffs have alleged that the fraud was actively concealed from them and that the annuity assignments were drafted in such a way as to "disguise and obfuscate" the fact that the annuities were issued for only a fraction of plaintiffs' investments, and plaintiffs could be found to have had no reason, based upon the assurances given by DLG and AEI, that the annuities would not cover their full investment as promised. *Ansley v. HealthMarkets, Inc.*, No. 5:08-CV-88-BR, 2011 WL 5903926 *5 (E.D.N.C. November 22, 2011). Plaintiffs have further alleged that defendant, who issued approximately forty annuities on the life of the president of DLG, was through its agent Cano, complicit in the fraud committed by DLG and AEI. As the factual allegations form a sufficient basis upon which to find that the plaintiffs were not on inquiry notice of any fraud in 2007, the Court will for purposes of this motion start plaintiffs' limitations clock on March 13, 2009.

A. *UDTPA Claim*

The Court finds that plaintiffs' UDTPA claim based on fraud as alleged in their amended complaint clearly relates back to plaintiffs' UDTPA claim alleged in their original complaint. Rule 15(c) of the Federal Rules of Civil Procedure provides that an amendment relates back to the date of the original pleading "[w]henever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that the statutes of limitations were intended to provide." *Baldwin Cnty Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

Here, plaintiffs alleged in their original complaint that defendant violated the UDTPA in preparing assignments without listing the actual amount of the annuity on the face of the assignment and that the assignments deceived plaintiffs by giving them the false impression that

the annuities were in an amount equal to their respective investments. [DE 4-1 at ¶ 60-63]. There is clearly a factual nexus between the amended and the original complaint, the allegations in the original complaint are sufficient to put defendant on notice of plaintiffs' UDTPA claim based on fraud, and defendant would not be prejudiced as it has clearly been forewarned of plaintiffs' claims against it. *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983). Because plaintiffs' UDTPA claim based on fraud relates back, it is deemed as having been filed on February 25, 2013, within the four year limitations period should the period be found to begin on March 13, 2009.

B. *North Carolina Securities Act claim*

Nor is plaintiffs' North Carolina Securities Act claim barred by the applicable statute of limitations. As noted above, plaintiffs had three years after they discovered the facts constituting the violation or should have discovered a deceitful or fraudulent act that concealed the violation to file their claim. Using an accrual date of March 13, 2009, plaintiffs' NCSA claim became stale on March 13, 2012. Plaintiffs filed their initial action in state court, alleging *inter alia*, an NCSA claim, on March 9, 2012. [DE 21-1].

Although plaintiffs voluntarily dismissed their state court action in September 2012, the NCSA claim is deemed timely filed as it was re-filed within one year of plaintiffs' voluntary dismissal without prejudice. Rule 41 of the North Carolina Rules of Civil Procedure provides that "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal." N.C. R. Civ. P. § 1A-1, Rule 41(a)(1). As plaintiffs' amended complaint, which again alleges a Securities Act claim against defendant and involves the same conduct, was filed on May 14, 2013, within one year of the voluntary

7

dismissal, the claim continues to be deemed as having been filed on March 9, 2012, within the limitations period. *See e.g. Brannock v. Brannock*, 135 N.C.App. 635, 639 (1999) (so long as new action is substantially the same, involving the same parties and the same cause of action, Rule 41 savings provision is applicable); *see also Porter v. Groat*, 713 F. Supp. 893, 896-7 (W.D.N.C. 1987) (federal courts have long recognized that applicability of the Rule 41 savings clause to actions recommenced in federal court).

II. PLAINTIFFS HAVE STATED CLAIMS UPON WHICH RELIEF CAN BE GRANTED

A. *Fraud claim*

Plaintiffs have pled with the requisite particularity for their fraud based claim to proceed. Failure to plead fraud claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure is considered to be a failure to state a claim upon which relief can be granted. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999). Particularity under Rule 9(b) requires that a plaintiff "plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* at 784 (citation omitted). The purpose of Rule 9(b) is to put defendants on notice and protect defendants from frivolous suits or fishing expeditions, and dismissal under Rule 9(b) is not appropriate if the "court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.*

Plaintiffs have alleged that an agent of defendant made false representations and omissions, that were reasonably calculated and made with the intent to deceive, and which did in fact deceive and injure plaintiffs. *See Ragsdale v. Kennedy*, 286 N.C. 130, 139 (1974) (listing elements of fraud claim). Plaintiffs have alleged that it was defendant's agent who made the

8

false representations, the time period in which such false representations were made, that Cano received commissions from defendant for her sales of annuities to DLG for assignment to plaintiffs, and defendant is well on notice of the circumstances for which it may have to prepare a defense. Plaintiffs have also sufficiently alleged a fraudulent omission by defendant as they have alleged that during these transactions an agent of defendant took steps to misrepresent material facts, the actual amounts of the annuities, from plaintiffs, potentially giving rise to a duty to speak on the part of defendant. *See Breeden v. Richmond Cmty Coll.*, 171 F.R.D. 189, 196 (M.D.N.C. 1997).

At bottom, plaintiffs have sufficiently alleged that defendant's agent, who also played a greater role in an overall scheme to defraud plaintiffs, perpetrated fraud on plaintiffs regarding defendant's annuities by actively concealing information and affirmatively misleading plaintiffs, as a result of which plaintiffs suffered financial injury. Moreover, plaintiffs have alleged that defendant, who through its agent sold approximately forty annuities on the life of the principal of a Ponzi-like scheme, gained a benefit from the alleged fraud perpetrated by its agent Cano.

Viewing the facts as alleged in the light most favorable to plaintiffs, as the Court is constrained to do at this stage of the proceeding, plaintiffs have stated their UDTPA claim based on fraud with sufficient specificity and judgment on the pleadings in favor of defendant is not appropriate.

B. *North Carolina Securities Act claim*

Plaintiffs agree that they may not bring a cause of action under the NCSA for claims involving annuities. *Id.* at § 78A-2(11) (defining security not to include annuities). Plaintiffs contend, however, that defendant may be liable as a controlling party under the NCSA, which
9

makes it unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

> (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or, (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Id. at § 78A-8. Moreover, persons who directly or indirectly control persons liable under the Act are jointly and severally liable for violations of the NCSA, unless they are able to show that they did not know nor could have known with the exercise of reasonable care that the Act was being violated. N.C.Gen.Stat. § 78A-56(c)(1).

At this stage of the proceeding, plaintiffs have sufficiently alleged that defendant directly or indirectly controlled its agent, Cano, who committed securities fraud, and plaintiffs have further alleged that defendant had reason to know, based in part upon its sale of numerous annuities on the life of the president of DLG, that Cano and DLG were violating the North Carolina Securities Act. *See e.g. Waterman v. Alta Verde Indus., Inc.*, 643 F. Supp. 797, 808 (E.D.N.C. 1986) (finding that aiding and abetting liability exists under § 78A-56). Because the factual allegations in support of plaintiffs' alternative claim for violations of the NCSA are sufficient to nudge their claim across the line from conceivable to plausible, *Twombly*, 550 U.S. at 570, it survives defendant's Rule 12(c) motion.

## CONCLUSION

Accordingly, for the reasons discussed above, defendant's motion for judgment on the pleadings [DE 19] is GRANTED IN PART AND DENIED IN PART. Judgment on the pleadings in favor of defendant on plaintiffs' negligence and negligent misrepresentation claims is GRANTED; defendant's motion is DENIED as it relates to plaintiffs' North Carolina Unfair

and Deceptive Trade Practices Act and North Carolina Securities Act claims. Defendant's motion to dismiss [DE 7] is DENIED AS MOOT.

SO ORDERED, this 2nd day of ~~November~~ December, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE